**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**MERLE RAMONE,**

    **Petitioner,**

**v.**                                              **No. 11-cv-0818 JCH/SMV**

**ERASMO BRAVO, Warden,**
**ATTORNEY GENERAL FOR THE STATE**
**OF NEW MEXICO,**

    **Respondents.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY**
**WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody [Doc. 1] and his [Memorandum] Attachment # 6 [Doc. 1-6] (collectively the "Petition"). On March 30, 2012, the Honorable Judith C. Herrera, United States District Judge, referred the claims raised in the Petition to the undersigned to recommend an ultimate disposition. Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings [Doc. 11]. Having considered the parties' submissions, the record in this case, the relevant law, and being otherwise fully advised in the premises, the Court recommends that the claims raised in the Petition be DENIED and that this case be DISMISSED with prejudice.[1]

---

[1] Because the sole issue in the Petition can be resolved on the record, the Court FINDS that an evidentiary hearing is unnecessary. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858–59 (10th Cir. 2005) (where a § 2254 petition can be resolved on record, an evidentiary hearing is unnecessary).

I.      **Factual and Procedural Background**

On July 23, 2001, Petitioner murdered two victims while robbing or attempting to rob three Albuquerque businesses. [New Mexico Supreme Court] Decision [Doc. 7-2] ("Direct Appeal") at 52. He was arraigned for the murders and numerous other charges on August 20, 2001. *Id.* During the period from January 20, 2002, to May 5, 2003, Petitioner's trial was set and rescheduled five different times. *Id.* at 53. On May 27, 2003, the district court issued a "Definite Notice of Trial," setting the trial for June 9, 2003, and stating that the case would not be continued again "except for good cause." *Id.* at 53. On May 29, 2003, Petitioner's defense counsel filed his first witness list, which included Dr. Richard Fink. *Id.* at 53. Dr. Fink was to testify regarding the Petitioner's blood-alcohol level and the effect that the blood-alcohol level had on Petitioner's ability to form specific intent. *Id.*; *see also* [June 2, 2003 Dr. Fink Letter] [Doc. 7-4] at 24–25 (writing to defense counsel, Dr. Fink opined that Petitioner's blood-alcohol level was likely around 0.24 to 0.25 at the time of the crimes, which made it "appear[] likely that . . . [Petitioner] was experiencing alcoholic blackout"). However, the subject of Dr. Fink's testimony was not communicated to the prosecution until June 2, 2003, via a facsimile copy of Dr. Fink's letter to defense counsel. Direct Appeal [Doc. 7-2] at 53.

On June 4, 2003, the State filed a motion in limine asking the trial court to exclude Dr. Fink's testimony and any mention of Petitioner's blood-alcohol level due to defense counsel's

noncompliance with Rule 5-602(F) NMRA.  Direct Appeal [Doc. 7-2] at 52.  Rule 5-602(F) mandates that:

> [i]f the defense intends to call an expert witness on the issue of whether the defendant was incapable of forming the specific intent required as an element of the crime charged, notice of such intention shall be given at the time of arraignment or within twenty (20) days thereafter, unless upon good cause shown, the court waives the time requirement of this rule.

Rule 5-602(F) NMRA. The trial court granted the motion and struck Dr. Fink from Petitioner's witness list.  Direct Appeal [Doc. 7-2] at 53–54.  Petitioner subsequently filed a motion in limine to allow Dr. Fink's testimony solely on the issue of Petitioner's blood-alcohol level, but it was also denied based on defense counsel's failure to notify the State within 20 days of the arraignment.  *Id.* at 54.  Even without Dr. Fink's testimony, defense counsel was able to introduce evidence at trial in support of Petitioner's intoxication defense.  Petitioner testified as to the amount of alcohol he had consumed on the day of the shootings, and defense counsel cross-examined the State's witnesses regarding their observations of Petitioner that day.  Direct Appeal [Doc. 7-2] at 54.  Moreover, at Petitioner's request, the trial court gave the jury an instruction outlining the relationship between intoxication and Petitioner's ability to form the specific intent necessary for a conviction.  *Id.*; Order on Petition for Writ of Habeas Corpus [Doc. 7-8] ("State Habeas Order") at 2.

On June 26, 2002, the jury found Petitioner guilty.[2]  He was sentenced to two consecutive life terms plus nearly 37 years in prison.  Judgment, Sentence, and Commitment [Doc. 7-1]

---

[2] Petitioner's convictions included two counts of First Degree Murder, two counts of Armed Robbery, four counts of Assault with Intent to Commit a Violent Felony, four counts of "Attempt to Commit . . . Armed Robbery," one count of Conspiracy to Commit Armed Robbery, and one count of Resisting, Evading or Obstructing an Officer. Judgment [Doc. 7-1] at 1–3.

("Judgment").  He appealed his case directly to the New Mexico Supreme Court arguing, among other things, ineffective assistance of counsel based on defense counsel's failure to timely identify Dr. Fink as an expert witness pursuant to Rule 5-602(F) NMRA.  Direct Appeal [Doc. 7-2] at 52 (direct appeal), 55 (arguing ineffective assistance of counsel).

On December 1, 2006, the New Mexico Supreme Court denied Petitioner's request to remand for an evidentiary hearing on his ineffective assistance of counsel claim.  *Id.* at 51, 62.  The Court cited the two-pronged test for ineffective assistance of counsel from *Strickland v. Washington*, 466 U.S. 668 (1984).  Direct Appeal [Doc. 7-2] at 61.  The Court addressed only the first *Strickland* prong, i.e., whether defense counsel's performance was deficient.  *Id.*  The Court found that trial counsel had pursued two alternate theories of defense:  (A) that Petitioner was not the shooter, and (B) that Petitioner was unable to form the necessary specific intent due to intoxication.  *Id.* at 61–62.  The Court held that counsel's failure to comply with Rule 5-602(F) could have been "a result of his initial desire to pursue his first theory of defense," and, therefore, there was a "reasonable trial tactic which would explain counsel's performance."  *Id.* at 62.  Finding that Petitioner had failed to establish a prima facie case for ineffective assistance of counsel, the Court denied the request for an evidentiary hearing and held that a habeas corpus proceeding was the "appropriate proceeding for [Petitioner] to make" that claim.  *Id.* at 62–63.

Petitioner pursued his ineffective assistance of counsel claim in a state-court habeas petition.[3] He claimed that his trial counsel's failure to disclose Dr. Fink in a timely manner amounted to ineffective assistance of counsel because that failure resulted in the exclusion of Dr. Fink's testimony as to Petitioner's inability to form specific intent. Amendment to Pro Se Petition for Writ of *Habeas Corpus* [Doc. 7-4] ("State Habeas Petition") at 6–7. That, in turn, deprived Petitioner of a defense as to every count, "[g]iven that every single charge that [Petitioner] faced at trial was a specific intent offense." *Id.* at 8. Petitioner claimed that "the only evidence that the defense was able to [introduce] in support of its intoxication defense was the [Petitioner's] own vague recollection as to how much alcohol he . . . likely had consumed, and eyewitness accounts on cross-examination . . . ." *Id.* at 7.

On February 21, 2011, the state district court denied Petitioner's habeas petition as to ineffective assistance of counsel. State Habeas Order [Doc. 7-8] at 1, 3. The court found that Petitioner had failed to satisfy either of the requisite two prongs of the test for ineffective assistance of counsel from *Strickland*. State Habeas Order [Doc. 7-8] at 2. The court found that two alternate defense theories were presented at trial, first, that Petitioner was not the shooter, and second that Petitioner was not capable of forming the necessary specific intent due to intoxication. *Id.* "Pursuant to the alternate theories of defense, the Petitioner failed to establish that the claimed error by trial counsel's failure to timely list Dr. Fink on the witness list was not related to a reasonable

---

[3] Petitioner's original state-court petition was summarily denied in August of 2007. [Withdrawn] Order on Petition for Writ of Habeas Corpus [Doc. 7-4] at 1. However, in December of 2007, the state district court withdrew its summary dismissal and reinstated Petitioner's habeas petition after realizing that the New Mexico Supreme Court's earlier Direct Appeal decision had indicated that Petitioner was entitled to pursue his ineffective assistance of counsel as a habeas petition. Status Conference Order on Habeas Corpus Petition [Doc. 7-4] at 3–4.

trial strategy in order to pursue [Petitioner's] first theory of defense," and he thus failed to meet the first prong of the ineffective assistance test. *Id.*

The court further held that even if Petitioner had met the first prong of the ineffective assistance test, he still

> failed to establish the second prong by showing prejudice to the defense. [He] was permitted to present evidence to the jury of a diminished capacity defense based on intoxication. The jury was given instructions on intoxication as related to [the] specific intent crime and was instructed that intoxication could keep Petitioner from being able to form the specific intent to commit relevant crimes . . . .

*Id.* The court concluded that "[b]ased on the overwhelming evidence against the Petitioner . . . and for the reasons stated above, [he] failed to show prejudice to the defense." *Id.*

On April 6, 2011, Petitioner petitioned the New Mexico Supreme Court for a writ of certiorari on the question of ineffective assistance of counsel. Petition for Writ of Certiorari [Doc. 7-8] at 11. The New Mexico Supreme Court summarily denied that petition. Order [Doc. 7-8] at 50. Petitioner then filed the present Petition on September 13, 2011. Petition [Doc. 1] at 1. On November 8, 2011, he withdrew two other claims from his Petition, leaving only his ineffective assistance of counsel claim. Reply to Respondent's Answer [Doc. 8] at 1.

**II.   Standard**

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case. The Court cannot grant habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in a petitioner's state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). The United States Supreme Court has construed these statutory provisions and established rules for applying them, in a series of cases decided since the enactment of AEDPA. *See, e.g.*, *Wright v. Van Patten*, 552 U.S. 120 (2008) (per curiam); *Fry v. Pliler*, 551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer*, 538 U.S. at 71 (quoting *Williams*, 529 U.S. at 412).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams*, 529 U.S. at 413. A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions. [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither

7

the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell*, 540 U.S. at 16 (quoting *Early*, 537 U.S. at 8); *see also Woodford*, 537 U.S. at 24 (noting the presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292–93 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. As long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision." *See Cook v. McKune*, 323 F.3d 825, 830–31 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision). Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell*, 540 U.S. at 17.

Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be

*objectively* unreasonable." *Lockyer*, 538 U.S. at 75–76 (emphasis added) (citation and internal quotation marks omitted).

### III.   Analysis

Petitioner alleges that he was denied constitutionally effective assistance of counsel because his trial counsel failed to timely identify Dr. Fink as an expert witness.[4] Petition [1-6] at 2. In evaluating an ineffective assistance of counsel claim, a court must measure defense counsel's performance by the two-pronged standard established by the Supreme Court in *Strickland*. To prevail on an ineffective assistance claim under the *Strickland* standard, Petitioner must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687–88. Both showings must be made to satisfy the *Strickland* standard. *Id.* at 687. To demonstrate unreasonable performance, Petitioner must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Petitioner must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The Court is not required to address both prongs of the *Strickland* standard if Petitioner makes an insufficient showing on one of the prongs. *Id.* at 697.

---

[4] The Petition does not clearly direct its ineffective assistance of counsel claim at a single state-court decision, but in this case there are two state-court decisions that treated the merits of Petitioner's ineffective assistance of counsel claim. *See* Direct Appeal [Doc. 7-2] at 60–63 (discussing Petitioner's ineffective assistance of counsel claim from his direct appeal from the Judgment); *see also* State Habeas Order [Doc. 7-8] 2–3 (discussing Petitioner's ineffective assistance of counsel claim from his state habeas petition). The Court therefore liberally construes the Petition as challenging both of the state-court decisions on Petitioner's ineffective assistance of counsel claim. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

Applying the AEDPA standard of review to Petitioner's ineffective assistance of counsel claim, the Court finds no merit to the claim. In his Reply to Respondents [sic] Answer [Doc. 8], he argues that the state courts' applications of *Strickland* were "contrary to federal law where counsel's performance should have been reviewed," *id.* at 6–7, and that the standard was "unreasonably applied . . . when performance by counsel before trial and counsel's deficient performance prejudiced the Petitioner resulting in [an] unreliable or unfair outcome in the proceeding," *id.* at 7. Petitioner further alleges that the "state court errored [sic] . . . while it based [its ruling] on overwhelming evidence." *Id.* at 2.

Though Petitioner has set forth the correct standard, he does nothing more than make conclusory statements that the state courts misapplied the *Strickland* test. He makes no attempt to explain *how* the state courts' applications of the test were contrary to, or involved an unreasonable application of, clearly established federal law. Moreover, Petitioner's claim that the underlying state decisions were contrary to law because "counsel's performance should have been reviewed," is simply wrong. The state courts *did* review his trial counsel's performance in depth and in detail. *See* Appeal Decision [Doc. 7-2] at 61–62; State Habeas Order [Doc. 7-8] at 2–3.

To the extent that Petitioner is arguing that the state courts applied *Strickland* in a way that is *generally* contrary to, or involved an unreasonable application of, federal law, his claim is equally without merit. Both state courts reasonably applied the first prong of *Strickland* when they found that trial counsel's alleged failure to timely identify Dr. Fink did not fall below an objective standard of reasonableness. Both state courts found that trial counsel pursued two separate theories of defense and that trial counsel's decision not to identify Dr. Fink as an expert was in pursuit of one defense

theory over the other and, therefore, was a matter of "trial tactic," Appeal Decision [Doc. 7-2] at 62, or "trial strategy," State Habeas Order [Doc. 7-8] at 2. The choice of whom to call as a witness is a tactical decision that is left as a matter of discretion for trial counsel. *Wainwright v. Sykes*, 433 U.S. 72, 93 (1997) ("[T]he day-to-day conduct of the defense rests with the attorney. He, not the client, has the immediate and ultimate responsibility of deciding . . . which witnesses, if any, to call, and what defenses to develop.") ( Justice Burger, concurring); *see also Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) (the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney); *United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981) ("Whether to call a particular witness is a tactical decision and, thus, a matter of discretion for trial counsel."). The state courts' characterization of counsel's failure to timely identify Dr. Fink as a trial strategy is not contrary to the *Strickland* standard. Petitioner has failed to demonstrate that the state courts' analysis of the first *Strickland* prong was contrary to, or an unreasonable application of, clearly established federal law. His claim, therefore, fails.

The New Mexico Supreme Court's analysis ended after it found that Petitioner had failed to establish the first *Strickland* prong. As mentioned *supra*, if the court finds that one prong of the test has not been met, it need not analyze the second prong. *Strickland*, 466 U.S. at 697. Nevertheless, in Petitioner's state court habeas action the state district court went on to analyze the second prong as well. State Habeas Order [Doc. 7-8] at 2–3. The district court found that Petitioner had failed to establish that his defense was prejudiced by his inability to call Dr. Fink as an expert witness. *Id.* The court's conclusion was based on three findings. First, the court found that Petitioner was permitted to present evidence to the jury of a diminished capacity defense based on

11

intoxication.  State Habeas Order [Doc. 7-8] at 2; *see also* [Portion of Trial] Transcript of Proceedings [Doc. 7-5] ("Trial Transcript") at 8 (intoxication as it related to mental state mentioned in the opening statements); Trial Transcript [Doc. 7-6] at 32, [Doc. 7-7] at 7–8 (intoxication defense brought up on cross-examination of witnesses); Direct Appeal [Doc. 7-2] at 54, 58 (Petitioner testified as to his own recollection of his intoxicated state), 58 (intoxication defense brought up on cross-examination of witnesses).  Second, the jury was given instructions on intoxication as related to specific intent crime and was instructed that intoxication could prevent Petitioner from being able to form the specific intent to commit the crimes charged in the indictment.  State Habeas Order [Doc. 7-8] at 2; *see also* Direct Appeal [Doc. 7-2] at 54, 58.  Third, the court found that there was "overwhelming evidence against the Petitioner, including evidence that he did not appear so intoxicated as not to be able to form specific intent . . . ."  State Habeas Order [Doc. 7-8] at 2.  Based on these three factors, the court concluded that Petitioner had failed to establish that there was a reasonable probability that Dr. Fink's testimony would have changed the outcome of the trial.[5]  This conclusion is not an unreasonable application of the second prong of the *Strickland* test.  Petitioner's claim, therefore, fails.

---

[5] Although the state district court did not address this issue, it is questionable whether Dr. Fink would have been allowed to give expert testimony on the level of Petitioner's intoxication at the time of the crimes, or its effect upon his ability to form specific intent. According to his letter to trial counsel [Doc. 7-4] at 24, Dr. Fink is a Ph.D. clinical psychologist. Nowhere in his letter (or anywhere else in the record) does he attempt to explain how he would be qualified to testify as an expert on intoxication. For example, there is no evidence in the record that he possesses any education, training, or expertise in chemistry or toxicology. The Court is skeptical whether he would have survived a *Daubert* challenge, which could explain why trial counsel did not identify him as an expert until a few days before trial. The late identification could have been a trial strategy to deny the prosecution time to investigate the witness's qualifications or to file a motion in limine based on *Daubert*.

## IV.     Conclusion and Recommended Disposition

For the foregoing reasons, the Court finds that Petitioner has not met his burden of showing that the state courts' decisions as to his ineffective assistance of counsel claim were contrary to, or unreasonably applied, clearly established federal law.

The Court therefore **RECOMMENDS** that Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody [Doc. 1] be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**